UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

THOMAS WALTER POLCYN,
          Plaintiff,
    v.

UNITED STATES OF AMERICA, ET AL.
      Defendants.

CASE NO. No. 4:26-cv-00302

## MOTION TO DISMISS PURSUANT TO RULE 12(b)(6) AND RESPONSE TO EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER

Plaintiff Thomas Walter Polcyn seeks to prevent the United States from foreclosing on a criminal restitution lien. In doing so, the Plaintiff asks this Court to find that an agreement he requested to avoid foreclosure on his vacation home—and which tolled statutes of limitations on the lien—was ineffective from the start. Such a claim has no basis in the undisputed facts or the law. Nor should the Plaintiff be permitted to unwind his agreement after reaping its benefits. The Emergency Motion for Temporary Restraining Order should be denied and the Complaint dismissed.

## I.    NATURE AND STAGE OF THE PROCEEDING

On August 21, 2000, a 21-count Indictment naming the Plaintiff, Thomas Polcyn, was filed in the United States District Court for the Southern District of Texas, Houston Division, Case No. 4:00-cr-00544. On January 10, 2001, the Plaintiff pled guilty to one count of Aiding and Abetting Bank Fraud in violation of 18 U.S.C. § 1341 and § 2. Ex. 1. On May 30, 2002, the Court entered judgment against the Plaintiff and sentenced him to 51 months imprisonment, three years of supervised release, a special assessment of $100, and restitution in an amount to be determined. *Id.* On July 3, 2002, the Court entered an Amended Judgment for modification of restitution. Ex. 2. The Court ordered the Plaintiff to pay restitution in the amount of $262,697 to Equicredit Corporation and $241,504 to First Bank Mortgage, for a total of $504,201.00, joint and several with co-defendants. *Id.*

1

Pursuant to 18 U.S.C. § 3613(c), upon sentencing, a federal tax-type lien arose against all property rights belonging to the Plaintiff. On July 26, 2004, the United States perfected its lien as to all property belonging to the Plaintiff located in Harris County by recording notice of it in the Official Public Records of Real Property of Harris County, Texas, as File Number X792946. Ex. 3. On the same date, the United States recorded notice of its lien with the Texas Secretary of State, as Document Number 65931220002. Ex. 4. On September 3, 2024, the United States perfected its lien as to all property belonging to the Plaintiff located in Galveston County by recording notice of it in the Official Public Records of Galveston County, as Document Number 2024039784. Ex. 5.

The Plaintiff was released from imprisonment on July 15, 2005. (Dkt 1 ¶ 14.) The United States has made demand on the Plaintiff for payment of restitution. As of January 2, 2026, a total of $126,113.66 has been collected from Thomas Polcyn towards his restitution debt, according to the records of the Clerk, United States District Court for the Southern District of Texas. The outstanding restitution balance is $162,156.69, which takes into account joint and several payments by co-defendants (not including interest).

On March 7, 2025, the parties entered a Letter Agreement Relating to the Sale of 1221 Bay Street, Crystal Beach, Texas 77650 ("Agreement"), attached as **Exhibit 6**.[1] (Dkt 1 ¶ 18.) As recounted in the Agreement, the Plaintiff and his wife own a beach house in Galveston County, Texas (the "Beach House"). Ex. 6 at 1. The United States holds a lien on the Plaintiff's Galveston property, including the Beach House, pursuant to 18 U.S.C. § 3613(c), which it perfected by recording notice of it in the Official Public Records of Galveston County as Document Number 2024039784 (defined in the Agreement as the "Lien"). *Id.* at 1; Ex. 5. Because government foreclosure was imminent, the

---

[1]     The Agreement, which is central to the Plaintiff's claim and incorporated in the Complaint by reference, is appropriate for this Court's consideration on a Rule 12(b)(6) motion. *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

Plaintiff requested, in lieu of foreclosure, an agreement allowing him time to sell the Beach House through private sale and apply the proceeds to the restitution balance. *See* Ex. 6 at 2. At the time of negotiations, the Plaintiff's restitution liability was set to expire on July 15, 2025, twenty years after the Plaintiff's release from imprisonment, pursuant to 18 U.S.C. § 3613.

To accommodate the Plaintiff's request to sell the Beach House voluntarily and avoid foreclosure—and in recognition of the upcoming lien deadlines—the Agreement set forth certain conditions. In relevant part, the Plaintiff "agree[d] that the Lien and [his] restitution obligation shall not expire and shall continue in full force and effect pending the sale" of the Beach House, "notwithstanding any provisions to the contrary, including 18 U.S.C. § 3613, until the USAO releases the Lien as described in Paragraph 4 of this Letter Agreement." Ex. 6 at ¶ 5. Paragraph 4 of the Agreement states that "[t]he USAO agrees to release the Lien . . . at the closing of an agreed upon sale on the conditions that: (a) You first sign this Letter Agreement; and (b) The closing agent for the sale of the [Beach House] first issues a certified check to the Clerk of the United States District Court . . . in the amount of the outstanding balance of restitution you are required to pay pursuant to the Criminal Case, to be paid out of the sales proceeds of the [Beach House]." *Id.* at ¶ 4. If the Plaintiff failed to sell the Beach House by December 31, 2025, the United States "will have the right to foreclose on the Lien," and "[t]he Lien and your restitution obligation shall not expire and shall continue in full force and effect, notwithstanding any provisions to the contrary, including 18 U.S.C. § 3613, until June 30, 2026." *Id.* at ¶ 8. In return, the United States agreed "that it will not foreclose on the Lien or take other measures to collect on the restitution debt until after December 31, 2025 . . . ." *Id.* at ¶ 7.

The Plaintiff did not sell the Beach House, and now that his time to do so has expired, he asks the Court for a declaration that the United States may not "foreclose, garnish, levy, seize, or otherwise enforce restitution." (Dkt 1 ¶ 30.) He has further requested a temporary restraining order enjoining the United States from foreclosing on his Beach House. (Dkt 6.) After the declaratory judgment action

was filed, but before the United States was served, the United States filed a Petition to Foreclose Lien and Appoint Receiver as to the Beach House and the personal property within the Beach House. *See* Case No. 4:00-cr-00544, Dkt 558. The Petition notes that the equity in the Beach House is greater than the Plaintiff's remaining restitution debt. *Id.* at ¶¶ 12-14.

## II.   STATEMENT OF ISSUES

The issue before this Court is whether the United States has the legal right to foreclose its lien on the Plaintiff's Galveston property, based on the Agreement between the parties. This question is dispositive of both the Motion for Temporary Restraining Order and the entire declaratory judgment action.

## III.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of a claim "on the basis of a dispositive issue of law." *Neitzke v. Williams*, 490 U.S. 319, 326 (1989). The court must "accept as true all well pleaded facts in the complaint," and "liberally construe[]" the complaint in the plaintiff's favor. *Campbell v. Wells Fargo Bank*, 781 F.2d 440, 442 (5th Cir. 1986). If the court finds "as a matter of law it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations, a claim must be dismissed," regardless of "whether it is based on an outlandish legal theory or on a close but ultimately unavailing one." *Neitzke*, 490 U.S. at 327. Such a review "streamlines litigation by dispensing with needless discovery and factfinding." *Id.* at 326-27.

In reviewing a motion to dismiss, the court must consider documents which are central to the Plaintiff's claim and incorporated in the Complaint by reference. *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). The court may likewise take "judicial notice of matters of public record." *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007).

Although a declaratory judgment action may be brought prior to injury occurring, "it is nevertheless subject to the ripeness requirement." *TOTAL Gas & Power N.A., Inc., v. Fed. Energy Reg.*

*Comm'n*, 859 F.3d 325, 333 (5th Cir. 2017). Therefore, an "actual controversy" must exist of "sufficient immediacy and reality." *Id.*

## IV.    SUMMARY OF THE ARGUMENT

The only dispute ripe for declaratory judgment concerns the viability of the Government's lien on the Plaintiff's Galveston property, including the Beach House. Because the parties' Agreement tolled any relevant statute of limitations on enforcement action, with the Plaintiff's explicit consent, until June 30, 2026, both the Plaintiff's restitution liability and the United States' lien on the Beach House remain enforceable, including through foreclosure. In addition, the United States has a contractual right to foreclose its lien based on the parties' Agreement.

## V.    ARGUMENT AND AUTHORITIES

The Plaintiff does not dispute that he knowingly and voluntarily entered the Agreement. Rather, he makes the narrow argument that the Agreement cannot toll the expiration of his restitution obligation under 18 U.S.C. 3613, contrary to the Agreement's plain language. This argument is invalid as both a statutory and contractual matter, and it therefore must fail.

### A.    THE LIVE DISPUTE BETWEEN THE PARTIES IS LIMITED TO THE GOVERNMENT'S ABILITY TO FORECLOSE ON ITS LIEN ON THE PLAINTIFF'S BEACH HOUSE.

The Plaintiff's Complaint is broadly written and requests a declaration that "[t]he United States may not foreclose, garnish, levy, seize, or otherwise enforce restitution." (Dkt 1 ¶ 30.) However, the ripeness doctrine limits this action's scope to whether the lien on the Beach House and the personal property it contains remains valid. The United States has not threatened to "foreclose, garnish, levy, seize, or otherwise enforce restitution" as to any property of the Plaintiff except the Beach House, which is subject to a Petition for Foreclosure. Although the Government reserves its rights to consider other collection actions, revenue received from the foreclosure and sale of the Beach House is expected to pay off the remainder of the Plaintiff's restitution debt. Because the Government has not expressed the intention to collect on the restitution liability through any other action at this time, the

5

only "substantial controversy of sufficient immediacy" subject to this Court's examination is the status of the lien on the Beach House and personal property contained within the Beach House. *TOTAL Gas & Power North Am.*, 859 F.3d at 335-36 (dismissing declaratory judgment action where it was "only a possibility" that a government entity would take certain "future actions"). Indeed, Plaintiff implicitly acknowledges that the Beach House foreclosure action is the impetus behind this civil litigation. (*See generally* Dkt 6.) To the extent the Complaint seeks a declaratory judgment as to any other theoretical collection action, it should be dismissed as unripe.

### B.    THE PLAINTIFF WAIVED THE RELEVANT STATUTES OF LIMITATIONS UNTIL JUNE 30, 2026.

#### 1.    Statutory Framework.

As a threshold matter, restitution in the Plaintiff's criminal case was ordered pursuant to 18 U.S.C. § 3663A. Section 3663A(c)(1) holds: "This section shall apply in all sentencing proceedings for convictions of, or plea agreements relating to charges for . . . an offense against property under this title . . . including any offense committed by fraud or deceit [and] . . . in which an identifiable victim or victims has suffered a physical injury or pecuniary loss." Here, the Plaintiff pled guilty to "an offense against property" under 18 U.S.C. §§ 1341 and 2, which was "committed by fraud or deceit," and which resulted in losses to two identified victims. Ex. 1. Under Section 3223A(a), therefore, restitution was a mandatory component of the Plaintiff's sentence. 18 U.S.C. § 3223A(a)(1) ("[W]hen sentencing a defendant convicted of an offense described in subsection (c), the court shall order, in addition to . . . any other penalty authorized by law, that the defendant make restitution to the victim of the offense.").

Based on the order of restitution pursuant to 18 U.S.C. § 3223A, a tax-type lien arose in favor of the United States "on all property and rights to property" of the Plaintiff "on the entry of the judgment." 18 U.S.C. § 3613(c). The restitution liability and the lien are covered by intertwined statutes of limitations. First, 18 U.S.C. § 3613(b) holds that "[t]he liability to pay restitution shall terminate on

6

the date that is the later of 20 years from the entry of judgment or 20 years after the release from imprisonment of the person ordered to pay restitution." Second, 18 U.S.C. § 3613(c) holds that the tax-type lien "continues for 20 years or until the liability is satisfied, remitted, set aside, or is terminated under subsection (b)." The Fifth Circuit, in *United States v. Joseph*, has provided helpful guidance on the interplay of these two tenants of Section 3613. 102 F.4th 686 (5th Cir. 2024). The defendant in *Joseph*, following a conviction in 2001 for various charges, was ordered to pay restitution of $24,025 and received a lengthy prison sentence. *Id.* at 688. By 2022, he had accumulated $18,217.83 in his inmate trust account, and the government moved for a turnover order to be directed to his restitution liability. *Id.* The Defendant argued that the termination of *liability* found in Section 3613(b) should be construed separately from Section 3613(c), which he alleged operates to terminate the *lien*. As a result, he argued, the lien would terminate on the earlier of the two dates, that is, twenty years after the date of his judgment. *Id.* at 689. The Fifth Circuit made short work of this interpretation, finding that subsection (b) and (c) were "coterminous as to termination." *Id.* at 690. In other words, a lien created under Section 3613(c) is not time-barred until the restitution is "satisfied, remitted, set aside, or is terminated under subsection (b)," even if twenty years have elapsed from the date of judgment. *Id.* at 689-90. Here, therefore, both the restitution liability and the government's lien would typically expire—but for the parties' Agreement—twenty years after the Plaintiff's release from imprisonment on July 15, 2005.

**2.      Parties may waive the affirmative defense of limitations.**

Long-standing precedent dictates that statutes of limitations may be waived by the parties. *See United Fruit Co. v. J.A. Folger & Co.*, 270 F.2d 666, 668 (5th Cir. 1959) ("We do not question the principle that the statutory period for bringing suit may be waived."); *In re Dynegy, Inc. Sec. Litig.*, 339 F.Supp.2d 804, 859 (S.D. Tex. 2004) (citing *Baris v. Sulpicio Lines, Inc.,* 932 F.2d 1540, 1551 (5th Cir.), *cert. denied,* 502 U.S. 963 (1991)) ("The ability of parties to enter agreements to waive the

7

assertion of defenses based on limitations has long been recognized in this circuit."). Courts therefore routinely uphold and enforce tolling agreements with regards to federal statutory limitations. *See, e.g.,* *Chapoy v. Union Pacific R.R.*, No. 22-40791, 2023 WL 6461252, at *4 (5th Cir. 2023) (per curiam) (finding parties tolled Federal Employers Liability Act's statute of limitations for one year); *Solis v. Universal Project Mgmt.*, No. H-08-1517, 2009 WL 10713833, at *8 (S.D. Tex. May 8, 2009) (upholding tolling agreement as to the Fair Labor Standards Act's statute of limitations); *U.S. Sec. & Exch. Comm'n v. Mintz*, No. H-07-1027, 2008 WL 11408489, at *5 (S.D. Tex. Feb. 5, 2008) (finding SEC action to be timely where it fell within an "agreed tolling period" of the parties); *In re Dynegy*, 339 F.Supp.2d at 859 (finding "express agreements pursuant to which defendants waive their right to assert limitations-based defenses to § 11 claims [of the 1933 Securities Act] are not ineffective as a matter of law."). This rule is particularly clear in the case of a "waiver for a definite time" which "will generally be enforced on its terms." *United Fruit Co.,* 270 F.2d at 668 n.1.

Moreover, the ability of parties to waive a statute of limitations has been recognized in both the civil context, as discussed *supra*, and the criminal, where the government is a party. *See, e.g., Capone v. Aderhold*, 65 F.2d 130, 131 (5th Cir. 1933) (statute of limitations in a criminal matter is an affirmative defense which may be waived); *United States v. Citgo Petroleum Corp.*, No. C-06-563, 2007 WL 4577400, at *2 (S.D. Tex. Dec. 21, 2007) (express tolling agreements "extended the limitations period" as to specific charges); *United States v. Del Percio*, 870 F.2d 1090, 1093-94 (6th Cir. 1989) (finding defendants' written waivers extended the statute of limitations); *United States v. Wild*, 551 F.2d 418, 424 (D.C. Cir. 1977) ("[I]f a defendant may waive certain constitutional rights, he should certainly be capable in this instance of waiving a statutory right such as the statute of limitations.").

Finally, there is no jurisdictional bar to the Court taking up the government's foreclosure action. The Supreme Court has held repeatedly "that procedural rules, including time bars, cabin a court's power *only if Congress has clearly stated as much.*" *United States v. Wong*, 575 U.S. 402, 409 (2015)

(cleaned up, emph. added). Under this rule, "most time bars are nonjurisdictional . . . even when the time limit is important (most are) and even when it is framed in mandatory terms (again, most are)." *Id.* at 410. Here, there is no indication that Congress intended, much less clearly stated, that Section 3613 presents "the rare statute of limitations that can deprive a court of jurisdiction." *Id.* Rather, it provides nothing more than typical "rules that seek to promote the orderly progress of litigation by requiring that the parties take certain procedural steps at certain specified times," and therefore "should not be described as jurisdictional." *Henderson v. Shinseki*, 562 U.S. 428, 435 (2011). The standard rule that statutes of limitations may "be waived or extended by agreement of the parties" should apply to this dispute. *Chapoy,* 2023 WL 6461252, at *2; *see also Del Percio*, 870 F.2d at 1093-94 (noting "every circuit court of appeals to address the issue has held that criminal statutes of limitations are waivable affirmative defenses that do not affect the subject matter jurisdiction of the courts"); *United States v. Spector*, 55 F.3d 22, 24 (1st Cir. 1995) ("A statute of limitations defense is a waivable affirmative defense, not a jurisdictional bar to prosecution.").

### 3.    The Legislative History of 18 U.S.C. § 3613.

The Court has noted that the original version of 18 U.S.C. § 3613(b), effective until April 23, 1996, contained a specific provision allowing parties to extend expiration dates through written agreement, and it has therefore requested the government address the import, if any, of the omission of that language in subsequent versions of the statute. Although Section 3613 has been amended several times over the years, it has always been with the expressed purpose of expanding the government's ability to enforce restitution, not limiting it. In fact, the original version of Section 3613 did not mention restitution at all. Rather, its focus was on the United States' ability to collect fines, and it was only through roundabout language in the Victim and Witness Protection Act that it could be used to enforce restitution through liens. *See generally United States v. Ridgeway*, 489 F.3d 732, 734-36 (5th Cir. 2007) (discussing the interplay of statutes in effect in 1993, including 18 U.S.C.

9

§ 3663(h)(1)(A), which held restitution orders could be enforced "in the manner provided for the collection and payment of fines in subchapter B of chapter 229 of this title."). In addition, the original statute contained a second, extra limit on the time for the government's enforcement powers through Section 3613(e), holding "a judgment imposing a fine may be enforced by execution against the property of the person fined in like manner as judgments in civil cases, but in no event shall liability for payment of a fine extend beyond the period specified in subsection (b)."

By April 24, 1996, however, Congress completely overhauled Section 3613 as part of the Mandatory Victims Restitution Act (MVRA). Section 3613 was no longer focused on fines: the purpose of the MVRA was "to improve the administration of justice in Federal criminal cases by requiring Federal criminal defendants to pay full restitution to the identifiable victims of their crimes." S. REP. NO. 104–179, at 12 (1995), *reprinted in* 1996 U.S.C.C.A.N. 924, 925. Congress's stated intent emphasized "establishing one set of procedures for the issuance of restitution orders in Federal criminal cases" and "consolidating the procedures for the collection of unpaid restitution with existing procedures for the collection of unpaid fines," with the express goal of "strengthening these procedures." *Id.* Section 3613(b) was therefore greatly amended to build a framework for restitution. The time period for the collection of fines and restitution was extended to "the later of 20 years from the entry of judgment *or 20 years after the release from imprisonment of the person fined*, or upon the death of the individual fined." Pub. L. No. 104–132, 110 Stat. 1214 (1996) (emph. added).  Congress added Section 3613(c) to clarify that an order of restitution "is a lien in favor of the United States on all property and rights to property of the person fined as if the liability of the person fined were a liability for a tax assessed under the Internal Revenue Code of 1986." *Id.* Section 3613(c) borrowed the time limits for these restitution liens from Section 3613(b). *Id.* In addition, the MVRA eliminated the strict limiting language in Section 3613(e) which had previously held "in no event shall liability for payment of a fine extend beyond the period specified in subsection (b)." *Id.* A diligent search of legislative

10

history does not reveal the purpose, if any, of omitting prior language sanctioning extensions by agreement, but the wholesale expansion of the statute in favor of government enforcement does not suggest Congress intended to preclude parties from making tolling agreements of the kind routinely permitted by law and the courts.

Though the entirety of the MVRA and the advances it made in providing crime victims with restitution is beyond the scope of this brief, one thing is beyond dispute: Congress intended "to ensure that the loss to crime victims is recognized," as well as to guarantee that "they receive the restitution that they are due." S. REP. NO. 104–179, at 12. As the Fifth Circuit has observed, "Congress directed the attorney general to aggressively enforce restitution orders with the 'inten[t] that the Department [of Justice would] commit the resources necessary to ensure that the rights of victims are enforced.'" *United States v. Phillips*, 303 F.3d 548, 551 (5th Cir. 2002) (citing Victim Restitution Act of 1995, Pub. L. No. 104–132, at 23) (alterations in original).

The legislative history of the MVRA undeniably demonstrates that Congress intended to provide more power to the government collect restitution, not less. Nevertheless, the Supreme Court has long held that legislative history is relevant only if "the statutory language is unclear." *Blum v. Stenson*, 465 U.S. 886, 896 (1984). Here, the statutory language is not unclear—it is simply silent as to whether limitations may be tolled. Many statutes are likewise silent, and courts routinely permit tolling so long as Congress has not "clearly stated" a jurisdictional bar. *Wong*, 575 U.S. at 409. As discussed *supra*, no such jurisdictional bar appears in the words of the statute. If Congress intended to forbid private agreements to toll limitations, it certainly had the ability to do so. It did not. Therefore, extensive precedent indicates that the parties were free to make their own bargain—as the Plaintiff chose to do here. To the extent legislative history may be relevant, "Congress directed the attorney general to aggressively enforce restitution orders" and fully intended to provide the means to do so. *Phillips*, 303 F.3d at 551.

11

**4.      The Plaintiff Waived Limitations on the Restitution Debt and the Lien.**

The Plaintiff admits he executed the Agreement with the United States. (Dkt 1 ¶ 18.) Because the United States is a party to the contract, the "laws of the United States" and "principles of general contract law" apply to its construction. *Sec. Life & Acc. Ins. Co. v. United States*, 357 F.2d 145, 148 (5th Cir. 1966); *see also S.R.A., Inc. v. State of Minn.*, 327 U.S. 558, 564 (1946) ("In determining the meaning and effect of contracts to which the United States is a party, the governing rule of law must be finally declared by this Court."). The standard is simple: if "the words used in the form and manner employed reveal what the parties must have intended" in their contract, the Court may interpret the contract as a matter of law.[2] *Lawrence v. United States*, 378 F.2d 452, 462 (5th Cir. 1967).

Here, the parties clearly and unambiguously tolled the relevant statutes of limitations. The Agreement plainly states that if the Plaintiff failed to sell the Beach House by December 31, 2025, the United States "will have the right to foreclose on the Lien," defined in the Agreement as the lien recorded in the Official Public Records of Galveston County as Document Number 2024039784, Ex. 6 at 1, which covers "all property belonging to" the Plaintiff. Ex. 5.  Moreover, the parties agreed "[t]he Lien and your restitution obligation shall not expire and shall continue in full force and effect, notwithstanding any provisions to the contrary, including 18 U.S.C. § 3613, ***until June 30, 2026***." Ex. 6 at ¶ 8 (emph. added). This language unequivocally provides that the parties intended and agreed to toll both the Plaintiff's restitution liability and the United States' lien on the Plaintiff's Galveston property until June 30, 2026. To the extent the Plaintiff argues the Agreement does not mean what it says, "The law will not imply a premise contrary to the express intention of the party to be charged."

---

[2]      At times, federal courts will borrow from state law in announcing federal rules. *Clearfield Trust Co. v. United States*, 318 U.S. 363, 367 (1943). Here, if the Court were to consider Texas law, the analysis remains the same because the words in the Agreement are clear. *Lawrence*, 378 F.2d at 462.

*Sec. Life & Acc. Ins. Co.*, 357 F.2d at 149. This is particularly the case here, where the Plaintiff has already received his bargained-for benefit and now seeks to avoid his own obligations.

### C.    THE UNITED STATES HOLDS A CONTRACTUAL LIEN.

In addition to tolling the relevant statutes, the Agreement created a contractual lien on the Beach House in favor of the United States until June 30, 2026. There is no dispute that "[p]arties may create a lien by agreement*." Provencher v. Binion & Sims, P.C.*, 401 F.Supp.2d 740, 743 (S.D. Tex. 2005). Indeed, "Federal courts have long enforced liens created by private contracts, particularly when the granting of the lien appears to be part of the consideration for the contract, as is the case here." *Id.* Contracts with the United States, which "are construed as contracts between private parties," *Security Life & Acc. Ins. Co.*, 357 F.2d at 148, are no exception to this rule. Thus, courts have routinely recognized the validity of government liens created pursuant to contract. *See, e.g.*, *United States v. Kimbell Foods, Inc.*, 440 U.S. 715, 718 (1979) (determining priority of federal contractual lien); *New York Trust Co. v. Va. Iron, Coal & Coke Co.*, 46 F.2d 248, 249 (5th Cir. 1931) (observing United States held lien on property in exchange for loan); *Conn. Mut. Life Ins. Co. v. Carter*, 446 F.2d 136, 138 (5th Cir. 1971) (determining priority of federal contractual lien).

Here, the Lien on the Beach House and all of the Plaintiff's Galveston property was granted to the United States until June 30, 2026, in exchange for certain consideration, namely, that the United States would forbear from foreclosing on the Plaintiff's property or "tak[ing] other measures to collect on the restitution debt until after December 31, 2025." Ex. 6 ¶ 7. There is no bar to the United States or the Plaintiff entering such a contract, and the Plaintiff offers none. Rather, the Agreement is wholly consistent with long-standing case law supportive of a party's right to create a lien by contract.

Likewise, where the government holds a contractual lien, it has the right to foreclose on that lien. *See, e.g.*, *Magnolia Fed. Bank for Sav. v. United States*, 42 F.3d 968, 972 (5th Cir. 1995) (affirming SBA foreclosure action); *Rosas v. U.S. Small Bus. Admin.*, 964 F.2d 351, 354 (5th Cir. 1992) (same). Here,

because "the granting of the lien" was "part of the consideration for the contract," it must be enforced by the court. *Provencher*, 401 F.Supp.2d at 743.

### D. AMENDMENT OF THE COMPLAINT WOULD BE FUTILE.

Finally, should the Plaintiff request leave to amend his complaint, such request should be denied as futile. *See Briggs v. Miss.*, 331 F.3d 499, 508 (5th Cir. 2003) (denial of motion for leave to amend is not an abuse of discretion where amendment would be futile). The entirety of the Agreement is before the Court on this Motion, and it provides no basis to hold that the pending foreclosure action on the Beach House is time-barred. No matter how Plaintiff frames his contentions, he cannot change the meaning of the unambiguous Agreement. Therefore, as the Complaint must be dismissed as a matter of law, and the Plaintiff can allege no facts supporting his requested relief, leave to amend should be denied.

## VI. CONCLUSION

For the reasons stated above, the United States respectfully requests that the Court deny the Plaintiff's Emergency Motion for Temporary Restraining Order and dismiss the Complaint.

Respectfully submitted,

JOHN G.E. MARCK
Acting United States Attorney

*/s/ Elizabeth A. Wyman*
Elizabeth A. Wyman
S.D. Tex. Federal No. 2294662
Assistant United States Attorney
1000 Louisiana, Suite 2300
Houston, Texas 77002
Telephone (713) 567-9000
Fax: (713) 718-3300
Elizabeth.Wyman@usdoj.gov

## Certificate of Service

I hereby certify that on March 27, 2026, a copy of this Motion was served on all counsel of record via the Court's ECF system.

_/s/ Elizabeth A. Wyman_
Elizabeth A. Wyman